PAUL HOWARD, APPELLANT, V. STEVE GERJEVIC ET AL., APPELLEES.

FILED APRIL 23, 1935. No. 29134.

*Marcell & Caldwell* and *Brome & Thomas,* for appellant.

*Kennedy, Holland & De Lacy* and *E. J. Svoboda, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Paine and Carter, JJ., and Chappell, District Judge.

Chappel, District Judge.

This is a law action brought by Paul Howard, plaintiff and appellant, against Steve Gerjevic, owner of an automobile, and Steve Poznich, the driver thereof, defendants and appellees, on account of personal injuries sustained by plaintiff while riding in the car as an invited guest. At the conclusion of plaintiff's evidence, upon motion of counsel for defendants, the trial court directed a verdict for defendants and entered judgment thereon. Motion for new trial was overruled, and appeal is taken to this court.

There is but one question for our decision: Was the evidence adduced by plaintiff in the trial court sufficient to present an issue of fact for the jury on the question of gross negligence, within the meaning of section 39-1129, Comp. St. Supp. 1931, commonly known as the Nebraska guest statute?

In reviewing the action of the trial court in directing a verdict, this court will regard as conclusively established every fact favorable to the unsuccessful party which the evidence proves or tends to establish. *Bainter v. Appel,* 124 Neb. 40; *Preston v. Stover,* 70 Neb. 632; *Kepler v. Chicago, St. P., M. & O. R. Co.,* 111 Neb. 273; *Gilbert v. Bryant,* 125 Neb. 731. Bearing this in mind, the evidence discloses that on Sunday, May 15, 1932, Steve Gerjevic, who owned an old 1924 Dodge touring car, gave his car keys to Steve Poznich and asked him to drive his (Gerjevic's) car to Fort Crook, Nebraska, and collect a bill for him. Plaintiff and two other men, while in the presence of Gerjevic and each other, were invited to ride with him. They accepted this invitation and, Poznich driving the car, proceeded to Highway No. 75, a regular paved highway, and thence on south towards Fort Crook to the point of the accident. Plaintiff testified that on the way out he told the driver several times to not drive so fast; that in his estimation he drove too fast; that the

car was swaying or zigzagging one way and then the other, and going faster than he cared for; that, while so weaving and going pretty fast, they passed a Ford car, and that he then warned the driver to not drive so fast, to which the driver paid no attention; that, after passing the Ford a short distance and while the car was still swaying, the driver turned around to talk to some one, and while looking back at the guests or at the car just passed and still talking, with only his left hand on the steering wheel, his right arm held like this (indicating), the car went in the ditch. From this time on the plaintiff was unconscious and remembered nothing about the accident. Mike Ninkovich, another occupant of the car, verifies all this and says that he warned the driver four or five times to watch out how he drove as the car was swerving back and forth, to which the driver paid no heed, but said, "Never mind, I am doing this;" that, as they passed the Ford, the car was swerving more, and he was going to jump out, that he was scared; that, as they passed a car which was traveling north, they went into the ditch.

Edward Hines, a trucker who lived near the scene of the accident and who was a wholly disinterested witness, never having known any of the parties, testified that he stood on his own property close to the fence which ran along about two feet from the highway line on the east side of the road and saw the accident happen right in front of him; that he first observed the Dodge car coming about 300 feet north of him; that his attention was called to it by the unusual noise of the car, which he thought was going about 40 or 45 miles an hour at the time of the accident; that just after the car passed a Ford it began to swerve, and that it made a larger swerve each of three times until it turned over; that at the last swerve, the car turned end for end, the left hind wheel struck the shoulder of the road and it turned over just like you would flop a fish, and went down in a ditch about five feet deep; that each time the car swerved it would leave

tire marks, skid marks, which he observed on the pavement.

Dr. Joseph P. Swoboda, the physician who treated the injured guests, testified that when he got to the hospital the driver, Poznich, was then on the operating table and he treated him first, at which time he detected the odor of liquor on the driver's breath, but could not say that he was intoxicated. It is conceded that the evidence does not disclose that the driver was intoxicated, but we believe that this testimony is a circumstance which the jury may take into consideration when they pass upon the question of whether or not the defendant driver was guilty of gross negligence under the circumstances.

We have construed the guest statute in several cases since its adoption, the first of which is *Morris v. Erskine,* 124 Neb. 754. In that case the court said:

"We are of the opinion that in adopting the guest act the legislature used the term 'gross negligence' as indicating a degree of negligence. Negligence may be slight, ordinary, or gross. Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It may be said that it indicates the absence of even slight care in the performance of a duty, and such, we think, is the meaning intended by the legislature.

"What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence. Ordinarily, the question of negligence, whether slight or gross, is one of fact. If the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine."

In *Gilbert v. Bryant,* 125 Neb. 731, we said: "When the Nebraska guest law of 1931 was enacted, a remedy for negligence resulting in personal injuries to a motorist's guest existed under the constitutional provision that 'every

person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law.' Const. art. I, sec. 13. The lawmakers did not intend to destroy entirely the civil remedy of a guest or to incumber the remedy with restrictions that would prevent a recovery for damages in a proper case. They did not define 'gross negligence' or use in connection with those words any such terms as 'abandoned, monstrous and approximately wanton disregard of safety' or 'intentional indifference to the danger.' They intended, of course, to increase, beyond want of ordinary care or slight negligence, the degree of negligence essential to the right of a motorist's guest to recover damages for personal injuries." See, also, *Morris v. Erskine, supra; Swengil v. Martin,* 125 Neb. 745; *Sheehy v. Abboud,* 126 Neb. 554; *Belik v. Warsocki,* 126 Neb. 560.

Appellee cites the case of *Thurston v. Carrigan,* 127 Neb. 625. The authority is not in point, as the court distinguished that case from the one at bar with this observation: "In the cases of *Morris v. Erskine, supra, Gilbert v. Bryant,* 125 Neb. 731, *Swengil v. Martin,* 125 Neb. 745, and *Sheehy v. Abboud,* 126 Neb. 554, wherein the guest was permitted a recovery, the imminence of danger was apparent to the driver and he was cautioned by the guest, but persisted in his negligent driving. The facts in each of those cases disclose that the driver was at least heedless of the consequences which might ensue by his reckless operation of the car, which involved, not only the rate of speed, but included other conditions which enhanced the peril and which were open to the driver."

We have not overlooked the able and exhaustive brief filed by the attorneys for appellees. The contentions made by them are not without precedent from other states, but this court believes that it has adopted the better view, the construction intended by the legislature in the adoption of the act. Bearing this in mind, we conclude that, under all the evidence adduced, reasonable minds might draw different conclusions as to whether the driver

was guilty of gross negligence. The cause should have been submitted to the jury for their determination.

A careful reading of the record disposes of appellees' contention that there is no charge or allegation of gross negligence in the petition. While probably not in the best form and far from a model pleading, the petition states a cause of action upon both alternatives of the guest statute. The trial proceeded and was concluded by the parties and the court on the theory that gross negligence had been charged, and, when considered as a whole, it will support a judgment in favor of plaintiff if recoverable under the evidence. *Gilbert v. Bryant, supra.*

For error in directing a verdict in favor of the defendants, this cause is reversed and remanded for further proceedings.

REVERSED.