LETTY WEAVER DAVIS, APPELLANT, V. LANDIS OUTBOARD MOTOR COMPANY ET AL., APPELLEES.

138 N. W. 2d 474

Filed December 3, 1965. No. 35983.

Spencer & Hoch and John S. Redd, for appellant.

Moran & James, Cline, Williams, Wright, Johnson, Oldfather & Thompson, and Richard M. Tempero, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

Plaintiff Letty Weaver Davis brought this action in the district court for Otoe County to recover damages for personal injuries suffered by her in an automobile accident. At the time she was riding in a jeep station wagon owned by defendant Landis Outboard Motor Company, under which name Clement M. Landis, Sr., and Clement M. Landis, Jr., operated their business at

Nebraska City. The defendant Lois M. Landis was the wife of Clement M. Landis, Jr., and was driving the vehicle at the time.

At the trial of the cause the defendants at the close of plaintiff's evidence made a motion for a directed verdict or in the alternative for a dismissal of the action. The trial court sustained the motion and dismissed the action. From an order overruling her motion for a new trial the plaintiff has appealed to this court.

The plaintiff maintains the trial court erred in finding as a matter of law in both instances, first, that plaintiff was a guest in the automobile in which she was riding, and second, the defendant driver was not guilty of gross negligence, because of which rulings the action was dismissed and a new trial denied.

The record in the case before us shows that on the day of the accident, July 29, 1962, the plaintiff, a resident of Imogene, Iowa, accompanied her friend, Glenn Fox, of Coin, Iowa, in his boat on the Missouri River. The boat was launched at Bartlett Landing on the Iowa side of the river about 15 miles north of Nebraska City. From there they proceeded up the river to Omaha, stopping at the River Club Marina at Fort Omaha where they had lunch. After spending "a couple of hours" there, they proceeded back down the river. At a point somewhere south of the South Omaha Bridge, the motor got "hot and stuck" and became inoperative. Fox paddled the boat downstream by hand for a ways, found a man near the river to whom he threw a rope, and docked the boat on the Iowa shore. Fox went with the man to a telephone. After first calling two marinas at Omaha, who he said were either busy or too expensive, he called Landis Outboard Motor Company and talked with defendant Clement M. Landis, Jr. Landis had worked on boats for Fox before and the latter had confidence in Landis' knowledge of the river and boat motors. Landis agreed to come up and assist. Landis arrived about 1½ hours later. Lois M. Landis, his wife, and two

daughters had accompanied him in the jeep station wagon to the place where the boat was laid up. The two men worked on the boat at least an hour before it was repaired. The river is perilous to navigate at night and requires an expert in navigation after dark. It was dusk when the work was finished and Fox was afraid to make the trip. He engaged Landis to bring the boat back to the landing.

While the men were working on the motor, the plaintiff and the defendant Lois M. Landis remained on the bank with the children. When it was getting late Mrs. Landis went part way down the bank and met her husband. He handed her the plaintiff's bag. Returning she told the plaintiff, "You will go with me." She drove the jeep and on the way told plaintiff she was not going to Bartlett but directly to Nebraska City. Mr. Fox did not remember how plaintiff's carriage was arranged. Mrs. Landis, in answering interrogatories served by the plaintiff and introduced in evidence by her counsel, testified that Mr. Fox had called her husband to fix the engine on the boat. This was the reason for the trip. It being Sunday she took the children along for the outing. Although she did not normally go with him on boat repair calls, she did in this instance in order to drive back if her husband needed to drive the boat in the dark which Mr. Fox had requested. Her husband told her Mr. Fox had asked if plaintiff could ride back with her and Landis had told Fox she could.

The men went down the river in the boat to Bartlett Landing where it was loaded and taken to the boat shop of defendants Landis at Nebraska City. After going to the home of defendants Landis, they were informed of the accident with the jeep. Fox intended to compensate Landis for his services, but on being asked about it, Landis said, "We have had enough trouble, just skip it."

Meanwhile, the defendant Lois M. Landis was driving the jeep with her children and the plaintiff therein

southward toward Nebraska City. About 3 miles north thereof they approached a left-hand curve, commonly called the "beehive curve." Plaintiff testified that part of the way around the curve the jeep "began to kind of zag, and she (Mrs. Landis) threw up her hands and said, 'I can't make it!' That's the last I can remember until it stopped." She also had said that immediately before the accident the vehicle made a sharp turn to the right. Mrs. Landis, in answer to interrogatories put in evidence by the plaintiff, stated that just before the accident her vehicle was in high gear, traveling about 50 miles per hour. She did not put on her brakes because the accident happened so fast she did not have time to consider doing so. There were no mechanical defects in the jeep. Photographs of the roadway were taken shortly after the accident and introduced in evidence. The newspaperman who took them testified that the road was paved at the curve, that the paving was normal and not wet, and that there was no fog or smoke.

We will first consider the question relating to the status of the plaintiff while riding in the defendants' car, to wit: Whether she was a guest or a passenger therein.

In Born v. Estate of Matzner, 159 Neb. 169, 65 N. W. 2d 593, this court in its syllabi stated: "A guest by the terms of section 39-740, R. R. S. 1943, is a person who accepts a ride in a motor vehicle without compensation therefor.

"The words of the statute 'without giving compensation therefor' do not limit compensation to persons paying for transportation in cash or its equivalent and do not require that the compensation be exclusively from the passenger to the driver.

"A person riding in a motor vehicle is a guest if his carriage confers only a benefit upon himself and no benefit upon the owner or operator except such as is incidental to hospitality, social relations, companionship, or the like, as a mere gratuity. However, if his carriage

contributes such tangible and substantial benefits as to promote the mutual benefits of both the passenger and owner or operator, or is primarily for the attainment of some tangible and substantial objective or business purpose of the owner or operator, he is not a guest.

"A benefit to the owner or operator of a motor vehicle sufficient to remove an occupant riding in it from the provisions of the guest statute must be a tangible and substantial one and a motivating influence for his furnishing the transportation."

In Carter v. Chicago, B. & Q. R.R. Co., 170 Neb. 438, 103 N. W. 2d 152, many of the same rules are set forth. In that case it was further held: "The question of whether a person riding in a motor vehicle is a guest, or engaged in a joint enterprise, or other relationship, is generally one for determination in the individual case. It must be ascertained from facts establishing the identity of the persons advantaged by the carriage, the relationship between the parties, and the purposes to which the transportation is incident."

In Lincoln v. Knudsen, 163 Neb. 390, 79 N. W. 2d 716, the syllabi of this court sets out: "An essential element necessary to be proved to entitle a passenger in an automobile to recover damages from the host on the ground of negligence less than gross is that he is a passenger for hire.

"The burden of proof means the duty resting on one party or the other to establish by a preponderance of the evidence an issue essential to recovery."

Applying these rules to the evidence in the case before us, it appears the plaintiff has failed to meet the burden of establishing that she was a passenger for compensation. Plaintiff contends it was intended the defendant Landis was to be compensated for his services by Fox. It appears, however, Landis was called to fix the motor on the boat and was further requested to drive it down the river in the dark. When he was called by phone there is nothing to indicate the plaintiff was

mentioned. It plainly appears the reason for plaintiff's returning by the automobile was to protect her from the risks incident to navigating the river after dark. This was a benefit to her. Nothing appears to indicate a benefit would occur to the defendants to have the plaintiff return by car rather than by boat. Defendants appear to have received no benefit whatever and certainly none that was tangible or substantial or that could be said to be the motivating influence for furnishing the transportation. Indeed it appears that the transportation was furnished plaintiff through a desire to render assistance to a lady who would otherwise be forced to undertake the trip home under circumstances involving considerable danger. Such a motive is reasonably attributable to ordinary hospitality. We find the status of the plaintiff while riding in the jeep was that of a guest.

The next question concerns whether gross negligence attributable to the defendant driver has been shown. In Born v. Estate of Matzner, 159 Neb. 169, 65 N. W. 2d 593, it is stated in the syllabi: "A guest to recover damages from his host for injury received by the guest while riding in a motor vehicle operated by the host must prove by the greater weight of the evidence in the case the gross negligence of the host relied upon by the guest and that it was the proximate cause of the accident and injury.

"Gross negligence means great and excessive negligence; that is, negligence in a very high degree. It indicates the absence of slight care in the performance of a duty." In that case, this court in its discussion stated: "The fact that the car of deceased got out of his control does not establish negligence and much less gross negligence nor does it prove the proximate cause of the accident. Negligence is not presumed and cannot be inferred from the fact that there was an accident. The burden was on appellant to prove gross negligence that was the proximate cause of the damage. This could not

be done by evidence from which negligence could only be surmised or conjectured. There was a serious deficiency in the proof. It does not show what caused the car to leave the highway."

In Boismier v. Maragues, 176 Neb. 547, 126 N. W. 2d 844, it was said: "As is made apparent by the cases on the subject, the line of demarcation between gross and ordinary negligence is not always clear. The cases however are clear in their declaration that negligence to be gross must be great or excessive; must be in a very high degree; not alone a momentary distraction of attention; and not alone the absence of slight care in the performance of a duty. See, Bishop v. Schofield, 156 Neb. 830, 58 N. W. 2d 207; Ottersberg v. Holz, 159 Neb. 239, 66 N. W. 2d 571; Holliday v. Patchen, supra; Pester v. Nelson, 168 Neb. 243, 95 N. W. 2d 491; Cole v. Wentworth, supra. * * * In the light of what has been said the burden is on the plaintiff in order to have sustained the judgment which she received in the district court to demonstrate by the record here that her evidence was sufficient to have submitted to a jury the question of gross negligence of the defendants in one or more of the five particulars charged in her pleaded causes of action." ...

In the present case the plaintiff in her petition alleges the defendant driver was negligent in four particulars.

She first states the defendant driver operated her automobile at a speed greater than was reasonable under the circumstances. The plaintiff testified she had no idea of the rate of speed. The only proof was the answer of the defendant driver to the interrogatories propounded to her and introduced by the plaintiff in which she stated the jeep was proceeding at 50 miles per hour. There is no evidence that such a rate of speed was not reasonable and prudent under the circumstances.

The second ground of negligence alleged is that she did not have the automobile under proper control on reaching the curve, and the third was that she failed

to observe, consider, and anticipate the curve in the highway. These will be considered by us together. Plaintiff testified that the accident occurred when they were through, or almost through, the curve. The jeep began to zag and immediately turned to the right. The defendant driver threw up her hands and said she could not make it. Why the jeep zagged is not shown. There is no evidence as to whether something suddenly happened to the vehicle since there is nothing to show it was examined subsequently. The evidence shows a crushed rock roadway led from the curved pavement. A photograph, exhibit 8, indicates some gravel or other substance was on the pavement at a point in the curve. Whether or not something on the highway caused the jeep to swerve is not shown. There is no evidence from which it can be told what caused the defendant driver to lose control of the jeep. Certainly she observed the curve and went through a portion of it. It is not shown whether she had traveled on and was familiar with this particular road, but whether or not she anticipated it, she realized she was in it when she got there and was attempting to negotiate it.

The last allegation is that the defendant driver did not keep a proper lookout ahead when, by exercise of ordinary care, she should have known she must turn at said point. There is no evidence that defendant driver did not maintain a proper lookout. Although the cause of the accident was not shown, the evidence indicates quite clearly that the failure, if any, on the part of the defendant driver was a momentary inadvertence which, under our decisions, does not constitute gross negligence. The record does not warrant the submission of the cause to the jury because of negligence which was great and excessive and of a high degree.

It follows that the trial court committed no error in holding the plaintiff's status was that of a guest in defendants' jeep. Neither did the court err in finding as a matter of law that gross negligence was not shown.

The judgment of the trial court was right and should be and is affirmed.

AFFIRMED.